IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF VIRGINIA

Richmond Division

LAKIA WILLIAMS,
     Plaintiff,

v.                                Civil No. 3:19cv631 (DJN)

AM LAPOMARDA, *et al.*,
     Defendant.

## MEMORANDUM OPINION

Plaintiff Lakia Williams ("Plaintiff") brings this action against A.M. Lapomarda, Inc. ("Lapomarda") and Ann Marie Fulcher ("Fulcher") (collectively the "Defendants"), alleging violations of 42 U.S.C. § 2000a *et seq.*, 42 U.S.C. § 1981, 42 U.S.C. § 1985(3) and Va. Code § 8.01-42.1, as well as a common law claim of intentional infliction of emotional distress ("IIED"). This matter comes before the Court on the Defendants' Motion to Dismiss Plaintiff's First Amended Complaint Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure (ECF No. 28). For the following reasons, the Court hereby GRANTS IN PART and DENIES IN PART Defendants' Motion (ECF No. 28).

## I.    BACKGROUND

In considering a motion to dismiss for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6), the Court will accept a plaintiff's allegations as true and view the facts in a light most favorable to the plaintiff. *Mylan Labs., Inc. v. Matkari*, 7 F.2d I 130, 1134 (4th Cir. 1993). However, the Court need not accept the plaintiff's legal conclusions. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Based on this standard, the Court accepts the following facts.

## A.    Factual Allegations.

Plaintiff, an African American woman, resides in Virginia.  (First. Am. Compl. ("Am. Compl.") (ECF No. 27) ¶¶ 2, 11.)  Lapomarda, a Virginia corporation, operates as the franchisee of a 7-Eleven franchise located in Richmond, Virginia (the "Store").  (Am. Compl. ¶ 3.)  Fulcher owns and operates Lapomarda.  (Am. Compl. ¶ 4.)  7-Eleven, a non-party co-conspirator, operates as the franchisor of the Store.  (Am. Compl. ¶ 6.)  At all relevant times, Edwin H. Neely ("Neely") worked for 7-Eleven as the manager of the Store.[1]  (Am. Compl. ¶ 5.)

Plaintiff strictly adheres to the Islamic faith, including the traditional dress code.  (Am. Compl. ¶ 12.)  On or about August 30, 2017, Plaintiff entered the Store during business hours to purchase gasoline and a beverage.  (Am. Compl. ¶ 13.)  In strict observance of her religious beliefs and practices, Plaintiff entered the Store wearing a niqab, as well as dark sunglasses to cover her eyes.  (Am. Compl. ¶ 17.)  Upon entering the store, Plaintiff, "ready, willing and able" to pay for her items, immediately approached Neely at the register to purchase gasoline and a beverage.  (Am. Compl. ¶¶ 19, 38.)  Neely, who identified himself as the store manager, demanded that Plaintiff uncover her face to receive service.  (Am. Compl. ¶ 20.)  Plaintiff explained to Neely that her religious beliefs as a Muslim required that she keep her face covered in public.  (Am. Comp. ¶ 21.)  According to Plaintiff, Neely laughed in response and stated that he did not know if Plaintiff planned to rob the store and that he would need to identify Plaintiff if she did.  (Am. Compl. ¶ 22.)  Neely stated that he would only serve Plaintiff if she removed her sunglasses.  (Am. Compl. ¶ 23.)

---

[1]     Plaintiff initially named Neely as a Defendant in her Amended Complaint.  However, on May 6, 2020, Plaintiff filed a Notice of Voluntary Dismissal of Edwin H. Neely (ECF No. 34). On May 11, 2020, the Court dismissed without prejudice all claims against Neely (ECF No. 35).

In an effort to avoid further confrontation, Plaintiff accommodated Neely's demand and lifted her glasses to reveal her eyes. (Am. Compl. ¶ 25.) However, even after Plaintiff complied with Neely's request, Neely still refused to serve her. (Am. Compl. ¶ 26.) In fact, Neely told her "[y]ou should not even be in our store," because "you are a security risk." (Am. Compl. ¶ 27.) Further, as Plaintiff stood at the counter, Neely stated to another customer that "glasses are not a religious garment." (Am. Compl. ¶ 30.)

Subsequently, Neely called law enforcement to have Plaintiff removed from the Store. (Am. Compl. ¶ 34.) Officers from the Richmond Police Department arrived and explained to Plaintiff and Neely that they could not intervene in a civil dispute like the one at hand. (Am. Compl. ¶ 36.) Nonetheless, the Officers asked that Plaintiff leave the store. (Am. Compl. ¶ 37.)

During the encounter, Neely and Fulcher conversed on the phone together and Plaintiff alleges that Fulcher ratified and affirmed Neely's denial of service to Plaintiff and Neely's decision to call law enforcement. (Am. Compl. ¶¶ 31, 35.) Additionally, a bystander recorded the entire encounter on his cellphone. (Am. Compl. ¶ 39.) Plaintiff also asserts that Fulcher conferred with 7-Eleven regarding the denial of service to her and that 7-Eleven directed Fulcher not to communicate with Plaintiff regarding the incident. (Am. Compl. ¶ 32.) Plaintiff further contends that Fulcher informed 7-Eleven that Plaintiff was African-American and visibly dressed as a Muslim woman. (Am. Compl. ¶ 33.)

Following the encounter, Plaintiff exited the store without receiving service. (Am. Compl. ¶ 40.) Plaintiff called the 7-Eleven corporate customer service hotline to lodge a complaint. (Am. Compl. ¶ 41.) Subsequently, on or about August 31, 2017, Fulcher, after receiving a notification of Plaintiff's complaint to the 7-Eleven corporate office, telephoned Plaintiff to discuss the incident. (Am. Compl. ¶ 42.) During the call, Fulcher acknowledged that

3

she had remained on the phone with Neely during the incident and could hear the encounter

transpire. (Am. Compl. ¶ 43.) To justify Neely's actions, Fulcher explained to Plaintiff that

Neely exhibited paranoia because of "all of the stuff that's going on." (Am. Compl. ¶ 44.)

Plaintiff alleges that neither Lapomarda nor 7-Eleven had a policy of denying service to

patrons wearing sunglasses. (Am. Compl. ¶ 29.) And further, Plaintiff alleges that before,

during and after this event, Neely served similarly situated non-African American and non-

Muslim customers wearing dark sunglasses. (Am. Compl. ¶ 24.)

Since the incident, Plaintiff has experienced extreme emotional distress, shame and

humiliation. (Am. Compl. ¶ 52.) Additionally, Plaintiff now suffers from agoraphobia. (Am.

Compl. ¶ 53.) Plaintiff has since also suffered from mental anguish, resulting in difficulty

sleeping, eating, consorting with her husband and carrying out otherwise daily activities. (Am.

Compl. ¶ 54.) As a result, she has sought professional treatment. (Am. Compl. ¶ 52.)

**B.     Plaintiff's Causes of Action.**

Plaintiff originally filed her Complaint on August 28, 2019. (ECF No. 1.) Plaintiff filed

her Motion for Leave to File First Amended Complaint on February 26, 2020 (ECF No. 23),

which the Court granted in an Order issued on March 18, 2020. (ECF No. 26.) Plaintiff filed her

Amended Complaint on March 18, 2020. (ECF No. 27.)

In Count I, Plaintiff alleges a violation of Title II of the Civil Rights Act of 1964, 42

U.S.C. § 2000a-2, which prohibits discrimination in places of public accommodation on the basis

of race or religion. (Am. Compl. ¶¶ 58-69.) Plaintiff brings this claim against all Defendants.

(Am. Compl. ¶¶ 58-69.) Specifically, Plaintiff asserts that Defendants intentionally, willfully

and without legal justification deprived Plaintiff, on the basis of her race and religion, of the full

and equal enjoyment of the Store. (Am. Compl. ¶ 63-64.) Plaintiff alleges that these acts were

4

intentional, malicious, willful, wanton and in gross disregard of her rights. (Am. Compl. ¶ 65.) Because Title II does not allow for compensatory damages, Plaintiff seeks an injunction, permanently enjoining Defendants to comply with the requirements of the Civil Rights Act. (Am. Compl. ¶ 69.) Additionally, Plaintiff seeks punitive damages, costs and reasonable attorneys' fees. (Am. Compl. ¶ 69.)

In Count II, Plaintiff alleges a violation of the Civil Rights Act of 1866, 42 U.S.C. § 1981, which prohibits racial discrimination in contractional relations. (Am. Compl. ¶¶ 70-76.) Plaintiff brings Count II against all Defendants. (Am. Compl. ¶¶ 70-76.) Specifically, Plaintiff asserts that she, a member of a protected class within the scope of § 1981, attempted to contract with Defendants for the purchase of gasoline and a beverage at the Store. (Am. Compl. ¶ 74.) By treating Plaintiff differently than similarly situated non-African-American patrons, Defendants' conduct interfered with Plaintiff's ability to contract and her equal enjoyment of a contractual relationship with Defendants. (Am. Compl. ¶¶ 74-75.) Plaintiff seeks an order of injunction against each Defendant, permanently enjoining Defendants to comply with the requirements of § 1981, as well as compensatory damages. (Am. Compl. ¶ 76.) Plaintiff also seeks punitive damages, costs and reasonable attorneys' fees. (Am. Compl. ¶ 76.)

In Count III, Plaintiff asserts that all Defendants conspired to violate her civil rights, in violation of 42 U.S.C. § 1985(3). (Am. Compl. ¶¶ 77-88.) Plaintiff alleges that each Defendant purposefully planned and conspired to deny her, on the basis of her religious beliefs, her right to exist free of discrimination in a place of public accommodation. (Am. Compl. ¶ 80.) Plaintiff further asserts that Defendants knowingly and intentionally deviated from the applicable 7-Eleven anti-discrimination policies, such that Defendants acted outside the scope of their agency relationships. (Am. Comp. ¶ 85.) Plaintiff contends that Defendants are jointly and severally

liable to her for compensatory damages and punitive damages. (Am. Compl. ¶ 88.) Plaintiff also seeks costs, attorneys' fees, and pre-and post-judgment interest. (Am. Compl. ¶ 88.)

Plaintiff brings Count IV against Fulcher, alleging a violation of Va. Code § 8.01-42, which provides, in pertinent part, civil damages for an individual subject to acts of intimidation, harassment or violence against her person, where such acts are motivated by racial, religious or ethnic animosity. (Am. Compl. ¶ 90.) Specifically, Plaintiff asserts that Neely subjected her to intimidation and harassment, and that Fulcher joined in and ratified Neely's conduct. (Am. Compl. ¶¶ 91-94.) Plaintiff contends that Fulcher and Neely intentionally, willfully and wantonly violated § 8.01-42.1. (Am. Compl. ¶ 95.) Plaintiff seeks compensatory damages, punitive damages, costs, reasonable attorneys' fees, and pre-and post-judgment interest. (Am. Compl. ¶ 95.)

Finally, in Count V, Plaintiff asserts a Virginia common law claim of IIED against Fulcher. (Am. Compl. ¶¶ 96-104.) Plaintiff specifically contends that Neely engaged in extreme and outrageous conduct, with the intent to cause, or with reckless and wanton disregard of the probability of causing, severe emotional distress. (Am. Compl. ¶ 97.) Further, Plaintiff alleges that Fulcher joined in and ratified Neely's conduct. (Am. Compl. ¶ 97.) Plaintiff seeks compensatory damages, punitive damages, costs and pre-and post-judgment interest. (Am. Compl. ¶ 104.)

## C.     Defendants' Motion to Dismiss Pursuant to Rule 12(b)(6).

On April 4, 2020, Defendants filed a Motion to Dismiss (ECF No. 28), moving this Court to dismiss Plaintiff's Amended Complaint (ECF No. 27) for failure to state a claim. (Mot. to Dismiss Pl.'s First Am. Compl. Pursuant to Rule 12(b)(6) of the Fed. R. of Civ. Pro. and Brief in Supp. Thereof ("Defs.' Mem.") (ECF No. 28).) Defendants argue that the Court must dismiss

Counts I, II and IV, because Plaintiff has failed to plead sufficient facts to demonstrate that race or religion motivated Defendants' conduct. (Defs.' Mem. at 1.) Additionally, Defendants assert that the Court must dismiss Count I, because Plaintiff has not demonstrated that she faces a real and immediate threat of redressable future harm. (Defs.' Mem. at 1-2.)

As to Count III, Defendants contend that even if Plaintiff has sufficiently pled facts to support a conspiracy claim, the Court must dismiss Count III pursuant to the Intracorporate Conspiracy Doctrine, because a corporation cannot conspire with its own agents. (Defs.' Mem. at 2.) Next, Defendants assert that the Court must dismiss Count V, because Plaintiff fails to allege facts sufficient to satisfy the heightened pleading requirements for an IIED claim under Virginia law. (Defs.' Mem. at 15.) Finally, as to each claim in Plaintiff's Amended Complaint, Defendants assert that the Court must deny Plaintiff's request for punitive damages, because Plaintiff has failed to demonstrate that Defendants willfully or recklessly sought to violate Plaintiff's rights. (Defs.' Mem. at 2.)

Plaintiff responded to Defendants' Motion on April 10, 2020. (ECF No. 29.) Plaintiff asserts that the Amended Complaint sufficiently states facts to show racial and religious motivation to support Counts I, II and IV. (Pl.'s Mem. of Law in Opp. to Defs. A.M. Lapomarda, Inc.'s and Ann Marie Fulcher's Mot. to Dismiss Pl.'s First Am. Compl. ("Pl.'s Opp.") (ECF No. 29) at 6-11.) Regarding Count I, Plaintiff further asserts that she has alleged a real and immediate threat of future harm sufficient to confer Article III standing and to warrant the award of injunctive relief. (Pl.'s Opp. at 11-14.)

Next, Plaintiff argues that Defendants' invocation of the Intracorporate Immunity Doctrine proves premature at the motion to dismiss stage. (Pl.'s Opp. at 14-17.) Moreover, she asserts that she has sufficiently stated a claim for conspiracy under 42 U.S.C. § 1985(3). (Pl.'s

Mem. at 17-18.) Finally, Plaintiff contends that she has alleged facts sufficient to support her IIED claim. (Pl.'s Opp. at 18-24.)

Defendants filed their Reply on April 16, 2020, rendering the matter ripe for review. (ECF No. 30.) Defendants reassert their original arguments and answer Plaintiff's assertions. (Reply Mem. of Law in Supp. of Defs.' Mot. to Dismiss Pl.'s First Am. Compl. Pursuant to Rule 12(b)(6) of the Fed. R. of Civ. P. ("Defs.' Reply") (ECF No. 30).)

## II.    STANDARD OF REVIEW

A motion to dismiss pursuant to Rule 12(b)(6) tests the sufficiency of a complaint or counterclaim. *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992). Under the Federal Rules of Civil Procedure, a complaint or counterclaim must state facts sufficient to "'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). The facts alleged must be sufficient to "state all the elements of [any] claim[s]. " *Bass v. E.1. Dupont de Nemours & Co.*, 324 F.3d 761, 765 (4th Cir. 2003) (citing *Dickson v. Microsoft Corp.*, 309 F.3d 193, 213 (4th Cir. 2002) and *Iodice v. United States*, 289 F.3d 270, 281 (4th Cir. 2002)). Ultimately, the "[f]actual allegations must be enough to raise a right to relief above the speculative level," rendering the right "plausible on its face" rather than merely "conceivable." *Twombly*, 550 U.S. at 544.

Relevant here, although a motion to dismiss filed pursuant to Rule 12(b)(6) typically may not address the merits of any affirmative defenses, in certain circumstances "where facts sufficient to rule on the affirmative defense are alleged in the complaint, the defense may be reached by a motion to dismiss filed under Rule 12(b)(6)." *Goodman v. Praxair, Inc.* 494 F.3d 458, 464 (4th Cir. 2007) (citing *Richmond, Fredericksburg & Potomac R.R. Co. v. Forst*, 4 F.3d

244, 250 (4th Cir. 1993)).  This principle applies only when "all facts necessary to the affirmative defense clearly appear[] on the face of the complaint." *Goodman*, 494 F.3d at 464 (internal quotation marks omitted).

## III.    ANALYSIS

### A.    The Court Will Not Dismiss Count I for Plaintiff's Lack of Standing.

In Count I, Plaintiff alleges that Defendants violated Title II of the Civil Rights Act of 1964, 42 U.S.C. § 2000a-2, which prohibits discrimination in places of public accommodation on the basis of race and religion.  (Am. Compl. ¶¶ 58-69.)  In support of their Motion to Dismiss, Defendants argue that the Court must dismiss Count I, because no real or immediate threat of future injury exists, as required to seek injunctive relief.  (Defs.' Mem. at 9-11.)  Plaintiff responds that she has alleged a real and immediate threat of future harm to confer Article III standing and to warrant injunctive relief.  (Pl.'s Opp. at 7-14.)

42 U.S.C. § 2000a states in relevant part:

> All persons shall be entitled to the full and equal enjoyment of the goods, services, facilities, privileges, advantages, and accommodations of any place of public accommodation, as defined in this section, without discrimination or segregation on the ground of race, color, religion, or national origin.

42 U.S.C. § 2000a(a).  Further, § 2000a-2 mandates that:

> No person shall (a) withhold, deny, or attempt to withhold or deny, or deprive or attempt to deprive any person of any right or privilege secured by section 2000a or 2000a-1 of this title, or (b) intimidate, threaten, or coerce, or attempt to intimidate, threaten, or coerce any person with the purpose of interfering with any right or privilege secured by section 2000a or 2000a-1 of this title, or (c) punish or attempt to punish any person for exercising or attempting to exercise any right or privilege secured by section 2000a or 2000a-1 of this title.

§ 2000a-2.  Defendants do not challenge that the Store constitutes a place of public accommodation as defined under § 2000a(b).  Because § 2000a does not provide a remedy at

law, Plaintiff seeks injunctive relief, permanently enjoining Defendants to comply with the requirements of the Civil Rights Act. § 2000a-3.

Defendants' assertions that Plaintiff has failed to demonstrate a real or immediate threat of future harm call into question Plaintiff's Article III standing to assert Count I. Therefore, the Court will address those arguments first, because an absence of standing deprives the Court of the power to adjudicate anything further about the claim. *Griffin v. Dep't of Labor Fed. Credit Union*, 293 F. Supp. 3d 576, 578 (E.D. Va. 2018), *aff'd*, 912 F.3d 649 (4th Cir. 2019).

"[F]ederal injunctive relief is an extreme remedy," *Simmons v. Poe*, 47 F.3d 1370, 1382 (4th Cir.1995), and thus an injunction will not issue unless the Plaintiff shows a clear right to relief. *Hoepfl v. Barlow*, 906 F. Supp. 317, 320 (E.D. Va. 1995). As part of establishing a clear right to relief, Plaintiff must first meet the requirements of standing to bring her suit. *Id.*

Article III of the Constitution limits federal courts' jurisdictions to "Cases" and "Controversies." U.S. Const. Art. III § 2. To satisfy the case-or-controversy requirement of Article III, Plaintiff must establish her standing to sue. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992). To meet the minimum constitutional requirements for standing, a plaintiff must establish three elements: (1) that the plaintiff has sustained an injury in fact; (2) that the injury is traceable to the defendants' actions; and (3) that the injury likely can be redressed by a favorable judicial decision. *Friends of the Earth, Inc. v. Gaston Copper Recycling Corp.*, 629 F.3d 387, 396 (4th Cir. 2011) (citing *Lujan,* 504 U.S. at 560–61). Relevant here, to demonstrate an injury in fact, a plaintiff must suffer an invasion of a legally-protected interest that is concrete and particularized, as well as being actual or imminent. *Gaston Copper Recycling Corp*, 629 F.3d at 396 (citing *Lujan*, 504 U.S. at 560); *McBurney v. Cuccinelli*, 616 F.3d 393, 410 (4th Cir. 2010).

10

Where, as here, a plaintiff seeks injunctive relief, a plaintiff must allege that there is a "real and immediate threat" that she will be wronged again. *Bryant v. Cheney*, 924 F.2d 525, 529 (4th Cir. 1991); *see also City of Los Angeles v. Lyons*, 461 U.S. 95, 101–03 (1983) (equitable remedy unavailable absent showing of irreparable injury, which requires sufficient likelihood that plaintiff will again be wronged in a similar way); *Godbey v. Iredell Mem'l Hosp., Inc.*, 2013 WL 4494708, at *4 (W.D.N.C. Aug. 19, 2013) (explaining that to obtain injunctive relief "[a] plaintiff must . . . allege a future encounter with the defendant that is likely to lead to a similar violation of some protected right").

"Standing rules preclude a plaintiff from obtaining injunctive relief based only on events that occurred in the past, even if the past events amounted to a violation of federal law." *Hoepfl*, 906 F. Supp. at 320. Indeed, "[p]ast exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief." *Lyons*, 461 U.S. at 102 (quoting *O'Shea v. Littleton*, 414 U.S. 488, 495-96 (1974)). Absent a "sufficient likelihood that [the plaintiff] will again be wronged in a similar way, [the plaintiff] is no more entitled to an injunction than any other citizen." *Id.* at 111. Furthermore, the allegation that a plaintiff will suffer a future injury at the hands of a defendant must be non-speculative and must evince more specificity than the future harm will occur "some day." *Lujan*, 504 U.S. at 564.

Generally, challenges to standing are addressed under Rule 12(b)(1) for lack of subject matter jurisdiction. Although Defendants have raised this issue within the context of a Rule 12(b)(6) motion to dismiss for failure to state a claim, the Court will review Defendants' assertion through the correct 12(b)(1) lens. *See Pitt Cnty. v. Hotels.com, L.P.*, 553 F.3d 308, 311 (4th Cir. 2009) (noting that the district court re-characterized a defendant's challenge to standing from a motion to dismiss for failure to state a claim under Rule 12(b)(6) to a motion to dismiss

11

for lack of subject matter jurisdiction under Rule 12(b)(1)). The district court should grant the Rule 12(b)(1) motion "only if the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law." *Id.* (internal quotations omitted). Where a party moves under Rule 12(b)(1) on the basis that a complaint fails to allege facts supporting the court's subject matter jurisdiction, the plaintiff "is afforded the same procedural protection as he would receive under a Rule 12(b)(6) consideration." *Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982). Further, where, as here, a defendant has not provided evidence to dispute the veracity of the jurisdictional allegations in the complaint, the Court accepts facts alleged in the complaint as true just as it would under Rule 12(b)(6). *Kerns v. United States*, 585 F.3d 187, 192–93 (4th Cir.2009) (citing *Adams*, 697 F.2d at 1219 (4th Cir.1982)). Ultimately, the plaintiff bears the burden of "clearly . . . alleg[ing] facts demonstrating that [s]he is a proper party to invoke judicial resolution of the dispute." *Warth v. Seldin*, 422 U.S. 490, 518 (1975).

Plaintiff contends that absent an injunction from this Court, she will suffer an irreparable injury due to Defendants' alleged ongoing violations of Title II of the Civil Rights Act. Plaintiff has alleged a past harm as a result of Defendants' alleged illegal conduct. She has further stated that "given the proximity of the Store to [her] residence and the highway, [she] would return to the store in the near future after Defendants' conduct is adequately proscribed, deterred, and modified." (Am. Compl. ¶ 67.) Additionally, Plaintiff contends that she has not received any enforceable assurances that Defendants would not continue their discriminatory conduct if she were to return to the Store. (Am. Compl. ¶ 68.)

In determining whether Plaintiff has alleged an imminent or actual threat of future harm, the Court will consider whether Plaintiff has alleged facts to show: (1) an intent to return to the Store, and (2) a sufficient likelihood of facing a similar harm again upon return. At the pleading

stage, a plaintiff must only allege a plausible plan to return to the establishment. *Nanni v. Aberdeen Marketplace, Inc.*, 878 F.3d 447, 455 (4th Cir. 2017). In considering a plaintiff's alleged intent to return, courts often consider several guiding factors including "(1) the proximity of defendant's business to plaintiff's residence, (2) the plaintiff's past patronage of defendant's business, (3) the definitiveness of plaintiff's plans to return, and (4) the plaintiff's frequency of travel near defendant." *Daniels v. Arcade, L.P.*, 477 F. App'x 125 (4th Cir. 2012) (noting district court's application of those four factors but declining to adopt them); *see also Payne*, 947 F. Supp. 2d at 573 (considering the same factors). Although the Fourth Circuit has declined to adopt the four-factor test, these factors still provide guideposts for the Court in assessing Plaintiff's allegations.

As to the first prong, Plaintiff has alleged that the Store is in the "proximity" of her residence and the highway. (Am. Compl. ¶ 67.) "While no per se rule should apply, the further away a plaintiff ordinarily finds herself from a business, the less likely she is to suffer future harm." *Payne*, 947 F. Supp. 2d at 573. Viewing the facts in the light most favorable to Plaintiff, the Court accepts Plaintiff's allegations that she lives in the proximity of the Store. Next, regarding the second prong, Plaintiff has alleged past patronage but does not specifically allege additional trips to the store. With all inferences in her favor, this factor weighs neither for nor against Plaintiff.

As to the third guiding factor, the Court considers the definitiveness of Plaintiff's plans to return to the Store. Here, Plaintiff has alleged that she "would return to the store in the near future after Defendants' conduct is adequately proscribed, deterred, and modified." (Am. Compl. ¶ 67.) At this stage, this allegation suffices. In *Nanni*, the Fourth Circuit rejected the theory that a plaintiff is "obliged to allege such specifics as the precise dates and arrangements

13

for his return to the [establishment or] his reasons for returning." 878 F.3d at 456.  Likewise, in

*Daniels*, the plaintiff alleged "that he intends to continue to visit the Market in the future for his

shopping needs." 477 F. App'x at 130.  The Fourth Circuit accepted the allegation for the

purposes of the motion to dismiss, and "deem[ed] the allegation plausible because Daniels

reside[d] in relatively close proximity to the Market." *Id.*  Here, although Plaintiff has not

alleged a specific plan to return to the store, she has stated that she would return to the Store in

the future.  (Am. Compl. ¶ 67.)  Given her proximity to the Store, the Court deems that allegation

plausible.  Finally, the last prong regarding the frequency of nearby travels does not provide

helpful guidance in the instant case.  Here, Plaintiff has already alleged that she resides in the

proximity of the Store.  (Am. Compl. ¶ 67.)  Therefore, she necessarily travels near the area of

the Store and this factor weighs in Plaintiff's favor.  Overall, with all inferences in Plaintiff's

favor at this stage, the Court finds that Plaintiff has alleged a plausible intent to return to the

Store.

　　Likewise, Plaintiff has plausibly alleged a sufficient likelihood that she would suffer

similar treatment if she returned to the Store.  Plaintiff alleges that "Defendants have evinced a

practice of unlawful and intentional discrimination against Muslims and African-Americans, by

treating Muslim and African-American patrons differently than similarly situated non-Muslim

and non-African-American or non-Muslim and non-African-American appearing patrons." (Am.

Compl. ¶ 46.)  And, Plaintiff alleges that she strictly adheres to the Islamic dress code (Am.

Compl. ¶ 12), indicating that she would wear similar attire when returning to the Store.  Further,

she states that she "has not received any enforceable assurance that Defendants would cease their

discriminatory conduct should she return to the Store," despite having a conversation with

Fulcher about the incident.  (Am. Compl. ¶¶ 42, 68.)   Likewise, Plaintiff alleges that Neely

14

manages the Store, allowing for an inference of an increased likelihood that Plaintiff would encounter him on a return visit. (Am. Compl. ¶ 5.) Consequently, based on the allegations in the Amended Complaint, Plaintiff has plausibly asserted that she would suffer the same injury upon returning to the Store.

The Court therefore finds that Plaintiff's has alleged sufficient facts to survive a challenge to her standing to bring Count I at the pleadings stage. Accordingly, the Court must next analyze whether she has stated a claim in Count I.

**B.    Plaintiff Has Sufficiently Pled Facts to Survive a Motion to Dismiss Count I.**

Defendants argue that, in addition to lacking standing to bring Count I, Plaintiff has failed to state a claim in Count I under 42 U.S.C. § 2000a. (Defs.' Mem. at 5-7.) To make out a prima facie case under § 2000a, a plaintiff must allege that (1) the establishment affects commerce, (2) the establishment is a public accommodation, (3) the establishment denied the plaintiff full and equal enjoyment of the establishment, and (4) the denial was based on the plaintiff's race and/or religion. 42 U.S.C. § 2000a; *see Bobbitt by Bobbitt v. Rage Inc.*, 19 F. Supp. 2d 512, 521 (W.D. N.C. 1998) (listing elements of cause of action); *Archibald v. Masters*, 2013 WL 461802 (W.D. Va. Feb. 5, 2013) (describing pleading requirements for suit under § 2000a).

The parties do not dispute the first two elements. With respect to the third element, Plaintiff alleges that she attempted to purchase gasoline and a beverage from the store. (Am. Compl. ¶ 13.) However, Neely demanded that she uncover her face to receive service. (Am. Compl. ¶ 20.) After Plaintiff lifted her sunglasses, Neely still refused to serve her. (Am. Compl. ¶¶ 25-26.) Eventually, after Neely called the police, Plaintiff left the Store without receiving service. (Am Compl. ¶¶ 34-40.) Accordingly, Plaintiff has alleged that the Store denied her equal enjoyment of the services.

15

With respect to the fourth element of her prima facie case, Plaintiff has plausibly alleged

that the Store denied her service based on her race and/or religion.  Plaintiff alleges that Neely

called her a security risk and laughed in response to her claim that her Muslim faith required her

to keep her face covered.  (Am. Compl. ¶¶ 21-22.)  Neely further stated that "glasses are not a

religious garment."  (Am. Compl. ¶ 30.)  Even after Plaintiff removed her sunglasses, Neely

refused to serve her.  (Am. Compl. ¶ 26.)  Instead, he summoned law enforcement.  (Am. Compl.

¶ 34.)  Importantly, Plaintiff alleges that Neely served similarly situated non-African American

and non-Muslim customers wearing dark sunglasses.  (Am. Compl. ¶ 24.)  Accordingly, making

all inferences in her favor, Plaintiff has alleged sufficient facts that the Store denied her service

because of her race and/or religion.  Therefore, Plaintiff's allegations in Count I state a claim for

relief and the Court will deny Defendants' Motion with respect to Count I.

### C.   Plaintiff Has Sufficiently Pled Facts to Survive a Motion to Dismiss Count II.

In Count II of her Amended Complaint, Plaintiff asserts a violation of 42 U.S.C. § 1981,

which prohibits racial discrimination in contractual relations.  (Am. Compl. ¶¶ 70-76.)  In their

Motion to Dismiss, Defendants argue that the Court must dismiss Count II, because Plaintiff fails

to allege facts to support her claim that race motivated Defendants' conduct.  (Defs.' Mem. at 8.)

In response, Plaintiff asserts that the Amended Complaint sets forth facts to show racial

motivation sufficient to state a claim under § 1981.  (Pl.'s Opp. at 6-10.)

It is well established that § 1981 prohibits racial discrimination in the making and

enforcement of private contracts. *Runyon v. McCrary*, 427 U.S. 160, 168 (1976).  Section 1981

states in relevant part:

> (a)  All persons within the jurisdiction of the United States shall have the same
> right . . . to make and enforce contracts . . . as is enjoyed by white citizens . . .

16

> (b) For purposes of this section, the term "make and enforce contracts" includes the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship.

§ 1981(a), (b).  To state a claim of discrimination relating to the purchase of goods or services, a plaintiff must plead facts showing that:

> (1) he is a member of a protected class; (2) he sought to enter into a contractual relationship with the defendant; (3) he met the defendant's ordinary requirements to pay for and to receive goods or services ordinarily provided by the defendant to other similarly situated customers; and (4) he was denied the opportunity to contract for goods or services that was otherwise afforded to white customers.

*Williams v. Staples, Inc.*, 372 F.3d 662, 667 (4th Cir. 2004); *see also Rumble v. 2nd Ave Value Stores*, __F. Supp. __, 2020 WL 1034359, at *8 (E.D. Va. Mar. 3, 2020) (applying the *Williams* standard).  Ultimately, the plaintiff must establish that the defendant intended to discriminate on the basis of race, and that the discrimination interfered with a contractual interest.  *Denny v. Elizabeth Arden Salons, Inc.*, 456 F.3d 427, 434 (4th Cir. 2006).  To survive a motion to dismiss, a plaintiff need not meet the heightened pleading requirement of the *McDonnell–Douglas* burden-shifting framework; however, a plaintiff must allege facts that are legally sufficient to plausibly state a claim under § 1981.  *Baltimore-Clark v. Kinko's Inc.*, 270 F. Supp. 2d 695, 699 (D. Md. 2003) (citing *McDonnell–Douglas v. Green*, 411 U.S. 792 (1973)).

In the instant case, no dispute exists that Plaintiff, an African-American woman, falls within a protected class.  Further, the parties do not dispute that Plaintiff sought to enter a contractual relationship with Defendants to purchase gasoline and a beverage and that she met the ordinary requirements to pay for and receive goods normally provided by Defendants.  Therefore, the question becomes whether Plaintiff has alleged facts sufficient to plausibly show that Defendants denied Plaintiff the opportunity to contract for goods or services otherwise afforded to white customers.  The Court finds that Plaintiff has alleged facts that plausibly

support her claim that Defendants interfered with her right to enter into a contract based on her race.

As an initial matter, a lack of direct evidence of racial animus does not necessarily prove fatal to Plaintiff's claim. *Distinguished Executives Transportation, LLC v. Cracker Barrel Old Country Store, Inc.,* 2018 WL 2171443, at *6 (S.D. W. Va. May 10, 2018) (citing *Williams,* 372 F.3d at 667). Plaintiff alleges that when she entered the Store, Neely told her that she had to remove her sunglasses, "stating that he did not know if [Plaintiff] was going to rob him and that he needed to be able to identify [Plaintiff] should a robbery occur." (Am. Compl. ¶ 22.) Even after Plaintiff removed her sunglasses, Neely refused to serve Plaintiff. (Am. Compl. ¶ 26). Indeed, after Plaintiff removed her sunglasses, instead of serving Plaintiff, Neely told her "[y]ou should not even be in our store," because "you are a security risk." (Am. Compl. ¶ 27.) Further, Neely called law enforcement to intervene. (Am. Compl. ¶ 34.) Finally, Plaintiff states that upon information and belief, Neely served similarly situated non-African American and non-Muslim customers wearing dark sunglasses in the Store before, during and after his encounter with Plaintiff, without asking that such customers remove their sunglasses. (Am. Compl. ¶ 23.) And, moreover, Plaintiff adds that upon information and belief, no policy existed to deny service to patrons wearing sunglasses. (Am. Compl. ¶ 29.)

Defendant asserts that Plaintiff's use of "upon information and belief" renders Plaintiff's allegations regarding any potential race discrimination "threadbare conclusion[s]." (Defs.' Reply at 7.) However, the pleading standards set forth in *Twombly* and *Iqbal* did not abolish pleading "upon information and belief." *Camco Mfg., Inc. v. Jones Stephens Corp.,* 391 F. Supp. 3d 515, 524 (M.D.N.C. 2019). The phrase "upon information and belief" does not automatically transform a factual allegation into a conclusory assertion. *Id.* For example, a proper use of upon

information and belief often exists were a plaintiff could not readily possess personal knowledge

of the extent of the facts asserted. *Mann Bracken, LLP v. Executive Risk Indemnity, Inc.*, 2015

WL 5721632, at *7 (D. Md. Sept. 28, 2015).  Indeed, "pleading on the basis of information and

belief is generally appropriate where information is particularly within defendants' knowledge

and control." *Id.* (quoting *Kajoshaj v. New York City Dept. of Educ.*, 543 F. App'x 11, 16 (2d

Cir. 2013)) (internal quotation marks omitted).

   Here, Plaintiff does not necessarily have access at this time to the full extent of

Defendants' business practices and records such that she could fully assert with personal

knowledge that Defendants served similarly situated non-African-American patrons at all other

times or had a policy of not serving patrons wearing sunglasses.  Moreover, Plaintiff's additional

factual assertions that Neely refused to serve her even after she removed her sunglasses, called

her a "security risk" and called the police to have her removed from the Store despite no facts to

indicate that she posed a threat provide sufficient factual enhancement to bolster her claim that

Defendants' actions were racially motivated.

   The "[Co]urt may dismiss a [claim] *only if* it is clear that no relief could be granted under

any set of facts that could be proved consistent with the allegations." *Swierkiewicz v. Sorema N.

A.*, 534 U.S. 506, 507 (2002) (emphasis added).  Here, the allegations contain sufficient factual

support to allow the Court, drawing on "judicial experience and common sense," to infer "more

than the mere possibility" that racial animus drove Defendants' actions and that Defendants

treated Plaintiff differently than similarly situated non-African-American customers.  *Nanni*, 878

F.3d at 452 (quoting *Iqbal*, 556 U.S. at 679).  Ultimately, Plaintiff has plausibly established that

Defendant intended to discriminate against her on the basis of race, and that the discrimination

19

interfered with a contractual interest. *Denny*, 456 F.3d at 434.  The Court finds that Plaintiff has

pled facts sufficient to state a claim and survive the motion to dismiss stage.

### D.      The Court Will Dismiss Count III for Failure to State a Claim.

In Count III of her Amended Complaint, Plaintiff alleges a violation of 42 U.S.C.

§ 1985(3), which prohibits conspiracies to violate civil rights.  (Am. Compl. ¶ 77-88.)  Plaintiff

brings this claim against all Defendants.  (Am. Compl. ¶¶ 77-88.)  Plaintiff alleges that each

Defendant purposefully planned and conspired to deny Plaintiff her right to exist free of

discrimination in a place of public accommodation on the basis of her religion.  (Am. Compl.

¶ 80.)  In their Motion to Dismiss, Defendants argue that the Court must dismiss Count III,

because Plaintiff has failed to plead facts supporting the existence of a civil conspiracy.  (Defs.'

Mem. at 12-13.)  Moreover, Defendants argue, even if the Court finds that Plaintiff has

sufficiently pled the existence of a conspiracy, the Intracorporate Conspiracy Doctrine mandates

the dismissal of Count III.  (Defs.' Mem. at 13-14.)  The Court agrees with Defendants that

Plaintiff has failed to state facts sufficient to plausibly demonstrate the existence of a conspiracy.

To state a claim under § 1985(3), the plaintiff must allege facts sufficient to show "(1) a

conspiracy of two or more persons, (2) who are motivated by a specific class-based, invidiously

discriminatory animus to (3) deprive the plaintiff of the equal enjoyment of rights secured by the

law to all, (4) and which results in injury to the plaintiff as (5) a consequence of an overt act

committed by the defendants in connection with the conspiracy." *Thomas v. The Salvation Army*

*S. Territory*, 841 F.3d 632, 637 (4th Cir. 2016) (quoting *Simmons v. Poe*, 47 F.3d 1370, 1376

(4th Cir. 1995) (internal quotation marks omitted)).  Although a plaintiff need not allege facts

that demonstrate an express agreement, the facts alleged must plausibly suggest that the

conspirators had a collective intent to carry out a "single plan, the essential nature and general

scope of which [was] known to each person who is to be held responsible for its consequences." *Simmons*, 47 F.3d at 1378 (alteration in original); *see also Lucas v. Henrico Cty. Pub. Sch. Bd.*, 2019 WL 5791343, at *12 (E.D. Va. Nov. 6, 2019) ("The plaintiff must allege facts which show that the defendants shared a unity of purpose or common design to injure the plaintiff." (quoting *Brown v. Angelone*, 938 F. Supp. 340, 346 (E.D. Va. 1996)). Ultimately, the plaintiff "must show an agreement or a meeting of the minds by [the] defendants to violate the [plaintiff's] constitutional rights." *A Soc'y Without A Name v. Virginia*, 655 F.3d 342, 346 (4th Cir. 2011) (quoting *Simmons*, 47 F. 3d at 1377) (internal quotation marks omitted).

Further, "the mere fact that each of [the] actors played a part in the events is not sufficient to show such a unity of purpose." *Lucas*, 2019 WL 5791343, at *12. Indeed, where a complaint alleges a conspiracy, the plaintiff must plead facts amounting to more than "parallel conduct and a bare assertion of conspiracy." *A Soc'y Without A Name*, 655 F.3d at 346. "Without more, parallel conduct does not suggest conspiracy, and a conclusory allegation of agreement at some unidentified point does not supply facts adequate to show illegality." *Id.* (internal quotations omitted).

The Fourth Circuit has consistently "rejected section 1985 claims whenever the purported conspiracy is alleged in a merely conclusory manner, in the absence of concrete supporting facts." *Id.* (quoting *Simmons*, 47 F.3d at 1377). Indeed, a party "cannot avoid a motion to dismiss a section 1985(3) claim under Rule 12(b)(6) by simply using the word 'conspiracy,' citing 42 U.S.C. § 1985(3), and claiming that discovery will reveal the requisite elements." *Ward v. Coastal Carolina Health Care, P.A.*, 597 F. Supp. 2d 567, 573 (E.D.N.C. 2009). The Fourth Circuit has described this standard as "relatively stringent." *Simmons*, 47 F.3d at 1377.

21

In the instant case, Plaintiff has failed to meet this "relatively stringent" standard. *Simmons*, 47 F.3d at 1377. Plaintiff alleges that "[e]ach Defendant purposefully planned and conspired to deny [Plaintiff] . . . equal protection of the laws by denying her right to be free from discrimination." (Am. Compl. ¶ 80.) Plaintiff further alleges that each Defendant "committed overt acts in furtherance of the conspiracy." (Am. Compl. ¶ 80.) In support of these conclusory allegations, Plaintiff simply states that "[d]uring his encounter with [Plaintiff], Neely was on the telephone with Fulcher." (Am. Compl. ¶ 31.) Plaintiff conclusively asserts that Fulcher ratified and affirmed Neely's denial of service. (Am. Compl. ¶ 31.) Further, Plaintiff alleges that Fulcher "joined in and ratified Neely's decision to call law enforcement to remove [Plaintiff] from the store." (Am. Compl. ¶ 35.) Plaintiff also asserts, upon information and belief, that Fulcher informed 7-Eleven of the incident and that 7-Eleven subsequently directed Fulcher to "refrain from communicating with [Plaintiff] any further." (Am. Compl. ¶ 32.) Finally, Plaintiff states that Fulcher called her after receiving notification of Plaintiff's complaint to the 7-Eleven corporate office. (Am. Compl. ¶ 43.) During the call, Fulcher "acknowledged that she was on the telephone with Neely during the incident and that she could hear what transpired." (Am. Compl. ¶¶ 42-43.) Fulcher justified Neely's actions by stating that Neely acted "paranoid" because "all of the stuff that's going on." (Am. Compl. ¶ 44.)

Plaintiff's allegations have failed to meet the "relatively stringent" standard and are not "enough to raise a right to relief above the speculative level," rendering the right "plausible on its face" rather than merely "conceivable." *Twombly*, 550 U.S. at 544. Indeed, the Court finds Plaintiff's allegations conclusory and devoid of sufficient factual support. Plaintiff has not pled any facts that plausibly allege a single plan to conspire to harass or intimidate Plaintiff or to deny her the use and enjoyment of the Store. At most, Plaintiff has alleged that Fulcher knew about

22

Neely's actions, because she remained on the phone during the encounter and that 7-Eleven, a non-party alleged co-conspirator knew about the incident. However, to sufficiently state a claim under § 1985, Plaintiff must allege facts to demonstrate the existence of "single plan, the essential nature and general scope of which [was] known to each person." *Simmons*, 47 F.3d at 1378 (alteration in original). Moreover, Plaintiff's factual allegations that Fulcher called 7-Eleven to inform them of the incident and subsequently contacted Plaintiff after the incident to justify and excuse Neely's actions invite the opposite conclusion.

Furthermore, "parallel conduct," such as remaining on the phone during the encounter, "and a bare assertion of conspiracy" do not suffice. Although Plaintiff alleges that "upon information and belief" Fulcher "joined in and ratified" Neely's actions, the Court need not accept legal conclusions presented as factual allegations, *Twombly*, 550 U.S. at 555, or "unwarranted inferences, unreasonable conclusions, or arguments," *E. Shore Mkts., Inc. v. J.D. Assocs. Ltd. P'ship*, 213 F.3d 175, 180 (4th Cir.2000); *see also Pasco v. Zimmerman*, 2012 WL 3562670, at *10 (W.D. Va. Aug. 17, 2012) (rejecting the plaintiff's allegation that the defendant "adopted, ratified and acquiesced" as threadbare legal conclusions).[2] Moreover, even if Fulcher did endorse Neely's actions, "[t]he mere fact that each of [the] actors played a part in the events is not sufficient to show . . . a unity of purpose" and a single plan. *Lucas*, 2019 WL 5791343, at

---

[2]    Moreover, Plaintiff's exclusive reliance on facts pled "upon information and belief" in asserting her conspiracy claim proves distinguishable from Plaintiff's use of the phrase regarding Defendants' business records and practices. This information does not necessarily exist solely within Defendants' control. *Mann Bracken, LLP*, 2015 WL 5721632, at *7 ("[P]leading on the basis of information and belief is generally appropriate where information is particularly within defendants' . . . control.") For example, Plaintiff witnessed Neely on the phone with Fulcher; however, she does not plead any facts from which the Court could even infer that Fulcher "joined in and ratified" Neely's actions. Moreover, she offers no additional concrete support to bolster her allegations.

*12 (citing *Brown*, 938 F. Supp. at 346).  Without more factual enhancement, the Court is left to

make an enormous leap from conceivable to plausible, relying on nothing more than conclusory

allegations.  The Court cannot infer a meeting of the minds, as required to demonstrate a

conspiracy under § 1985, based solely on conclusions and allegations made wholly upon

information and belief, without any further concrete factual support.  Consequently, Plaintiff has

failed to plead facts sufficient to state a claim of conspiracy under § 1985.[3]

> **E.    Plaintiff Has Sufficiently Pled Facts to Survive a Motion to Dismiss Count**
> **IV.**

Plaintiff brings Count IV against Fulcher, alleging a violation of Virginia Code § 8.01-

42.1. (Am. Compl. ¶¶ 89-95.)  Plaintiff alleges that Neely, motivated by religious animus,

subjected her to intimidation and harassment. (Am. Compl. ¶¶ 91-93.)  Plaintiff asserts that

Fulcher joined in and ratified Neely's conduct. (Am. Compl. ¶ 93.)  In their Motion to Dismiss,

Defendants argue that the Court must dismiss Count IV, because Plaintiff has failed to allege

facts sufficient to support her claim. (Defs.' Mem. at 9.)  The Court disagrees.

Virginia Code § 8.01-42.1 states, in relevant part, that:

> An action for injunctive relief or civil damages, or both, shall lie for any person
> who is subjected to acts of (i) intimidation or harassment . . . where such acts are
> motivated by racial, religious, or ethnic animosity.

Va. Code § 8.01-42.1(a).  Few courts have provided further elaboration of the statute or specific

standards to follow. *Sines v. Kessler*, 324 F. Supp. 3d 765, 800 (W.D. Va. 2018).  However,

Courts have found the elements of the statute satisfied when defendants used racial slurs and

attacked plaintiffs, *Frazier v. Cooke*, No. 4:17-CV-54, 2017 WL 5560864, at *7 (E.D. Va. Nov.

---

[3]    Because the Court finds that Plaintiff has failed to allege facts sufficient to support the
existence of a civil conspiracy, the Court need not consider the potential application of the
Intracorporate Conspiracy Doctrine.

17, 2017), and when a defendant's employee harassed plaintiff based on racial animus, used a racial slur and implied that African-Americans only came into the store to steal, *Berry v. Target Corp.*, 214 F. Supp. 3d 530, 535 (E.D. Va. 2016).

In the instant case, the Court finds that Plaintiff has alleged facts sufficient to survive a motion to dismiss. Plaintiff, dressed in a niqab, a traditional Muslim veil, and sunglasses to cover her eyes, entered the Store. (Am. Compl. ¶ 17.) When Neely demanded that Plaintiff uncover her face to purchase her items, Plaintiff explicitly told Neely that as a Muslim woman, her religious beliefs required that she cover her face in public. (Am. Compl. ¶ 21.) Laughing in response, Neely told Plaintiff that he did not know if she planned to rob the Store and that he would need to identify her if a robbery were to occur. (Am. Compl. ¶ 22.) Even after removing her sunglasses, Neely refused to serve Plaintiff. (Am. Compl. ¶ 23.) Plaintiff further alleges that Neely served similarly situated non-African-American and non-Muslim appearing customers wearing sunglasses and that neither 7-Eleven nor Lapomarda had a policy against serving customers wearing sunglasses. (Am. Compl. ¶ 24.)

Additionally, Neely told Plaintiff "[y]ou should not even be in our store," because "you are a security risk." (Am. Compl. ¶ 27.) Plaintiff also alleges that Neely said to another customer "glasses are not a religious garment." (Am. Compl. ¶ 30.) Neely never served Plaintiff and, further, Neely called the Richmond Police Department to have Plaintiff removed from the store. (Am. Compl. ¶ 34.) Neely and Fulcher remained on the phone throughout the entire encounter. (Am. Compl. ¶¶ 43-44.) Subsequently, Fulcher called Plaintiff and justified Neely's actions to Plaintiff, stating that Neely felt "paranoid," because of "all of the stuff that's going on." (Am. Compl. ¶¶ 43-44.)

Although Plaintiff has not presented any direct evidence of religious-based animus, the allegations contain sufficient factual support to allow the Court, "drawing on judicial experience and common sense," to infer "more than a mere possibility" that religious animus drove Defendants' actions. *Nanni*, 878 F.3d at 452 (quoting Iqbal, 556 U.S. at 679). In addition to the refusal of service, the Court can readily infer religious animus towards Plaintiff, an African-American Muslim woman, from Neely's comments about Plaintiff as being a "security risk" and implications that Plaintiff entered the store to rob it, as well as Fulcher's subsequent explanation that Neely's paranoia stemmed from "all of the stuff that's going on." *See, e.g., Berry*, 214 F. Supp. 3d at 535 (finding racial animus when an employee implied that African-Americans only came into the store to steal). The Court finds that Plaintiff has stated facts which plausibly state a claim upon which relief may be granted.

### F.      Plaintiff Has Sufficiently Pled Facts to Support her IIED Claim in Count V.

In Count V of the Amended Complaint, Plaintiff asserts a claim of IIED against Fulcher. (Am. Compl. ¶¶ 96-104.) Defendants argue that the Court must dismiss Count V, because Plaintiff has failed to plead facts sufficient to support an IIED claim under Virginia law. (Defs.' Mem. at 15.) Specifically, Defendants argue that to survive a motion to dismiss under Virginia law, Plaintiff must satisfy a heightened legal standard. (Defs.' Mem. at 15.) In response, Plaintiff asserts that she does not need to plead emotional distress with the particularity required in Virginia state courts and, therefore, she has sufficiently pled facts to survive a motion to dismiss under the federal pleading rules. (Pl.'s Resp. at 18.)

Under Virginia law, to state a claim for IIED, a plaintiff must plead that (1) the wrongdoer's conduct was intentional or reckless, (2) the conduct was outrageous or intolerable, (3) there was a causal connection between the wrongdoer's conduct and the resulting emotional

distress; and, (4) the resulting emotional distress was severe. *Daniczek v. Spencer*, 156 F. Supp.

3d 739, 757 (E.D. Va. 2016) (citing *Ogunde v. Prison Health Servs., Inc.*, 645 S.E.2d 520, 526

(Va. 2007)). As a preliminary matter, Virginia law disfavors the tort of IIED. *Russo v. White*,

400 S.E.2d 160, 162 (Va. 1991). Indeed, "'[IIED] is 'not favored' in the law, because there are

inherent problems in proving a claim alleging injury to the mind or emotions.'" *Williams v.*

*Agency, Inc.*, 997 F. Supp. 2d 409, 414 (E.D. Va. 2014) (quoting *Supervalu, Inc. v. Johnson*, 666

S.E.2d 335, 343 (Va. 2008)). In Virginia state courts, "a plaintiff alleging a claim for [IIED]

must allege in her motion for judgment *all* facts necessary to establish the cause of action in

order to withstand [a motion to dismiss]." *Almy v. Grisham*, 639 S.E.2d 182, 187 (Va. 2007)

(emphasis added). The standard requires heightened particularity and specificity. *Id.*

    In the instant case, Defendants claim that Plaintiff has not met the heightened standards

for IIED under Virginia law. (Defs.' Mem. at 15.) However, the Fourth Circuit has explicitly

stated that the federal pleading rules trump Virginia's heightened pleading standards for IIED

claims in federal cases governed by state law. *Hatfill v. New York Times Co.*, 416 F.3d 320, 337

(4th Cir. 2005); *see also Daniczek*, 156 F. Supp. 3d at 758 (explaining the Fourth Circuit's

ruling); *Williams*, 997 F. Supp. 2d at 414 ("Plaintiffs' IIED claim must meet the pleading

standard found in the Federal Rules, rather than the heightened standard required by Virginia

state courts."); *White v. Ocean Duchess Inc,*, 2007 WL 4874709, at *5 (E.D. Va. Nov. 7, 2007),

*report and recommendation adopted*, 2008 WL 318299 (E.D. Va. Jan. 31, 2008) ("In federal

court, plaintiffs do not have to plead emotional distress with the particularity required in Virginia

Courts."). Unlike in the Virginia state courts, "substantive claims for intentional infliction of

emotional distress under Virginia law need not be pled in federal court with the degree of

specificity required by Virginia courts." *Faulkner v. Dillon*, 92 F. Supp. 3d 493, 501 (W.D. Va.

2015) (alterations, internal quotations and citations omitted). Therefore, although a plaintiff in state court must plead "all facts necessary to establish a cause of action in order to withstand challenge on demurrer," *Almy*, 639 S.E.2d at 187, plaintiffs in federal court need only allege sufficient facts to "allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," *Faulkner*, 92 F. Supp. 3d at 500-01 (internal quotations and citations omitted). Plaintiff must allege facts sufficient to plausibly support each of the four elements of an IIED claim.[4]

In the instant case, Defendants appear to challenge the second and fourth prongs of Plaintiff's IIED claim. Namely, that Defendants' actions failed to rise to the requisite level of outrageousness or intolerability and that Plaintiff's distress did not exhibit the necessary degree of severity as required by Virginia courts. The Court will address each element in turn.

Under Virginia law, the element of intent requires that the defendant engage in conduct for the specific purpose of causing emotional distress to the victim. *Almy*, 639 S.E.2d at 187.

---

[4]     The Fourth Circuit decided *Hatfill* before the Supreme Court's decisions in *Iqbal* and *Twombly*, as well as the Supreme Court of Virginia's decision in *Almy* (which maintains the heightened standard for IIED claims under Virginia law). In light of those intervening cases, a select few courts within the Eastern District of Virginia have found that *Hatfill* no longer sets a lower bar for IIED claims at the motion to dismiss stage. *See Daniczek*, 156 F. Supp. 3d at 759 (explaining the evolution of this case law). However, the discussion in *Almy* regarding the heightened pleading standard merely restates the previous Supreme Court of Virginia holding in *Russo*, which outlined the heightened pleading requirements for IIED cases under Virginia law. In *Hatfill*, the Fourth Circuit held that the holding in *Russo* does not supplant the federal pleading standards at the motion to dismiss stage. *Hatfill*, 416 F.3d at 337.

As Senior United States District Judge Robert E. Payne explained in his 2016 decision in *Daniczek*, "[i]f the Fourth Circuit decided that Rule 8 preempts *Russo*, there is no reason to believe that the Rule 8 does not preempt *Almy*." 156 F. Supp. 3d at 759. And, moreover, although *Twombly* and *Iqbal* undoubtedly trump *Hatfill*, "*Twombly* and *Iqbal* demand specificity (rather than conclusory allegations), without altering the type of harm the plaintiff must allege." *Id.* Therefore, this Court adopts the *Hatfill*, *Williams* and *Daniczek* approach that Plaintiff's IIED claim must meet the pleading standard found in the Federal Rules, rather than the heightened standard required by Virginia state courts.

An individual may also inflict emotional distress recklessly if he acts without regard to the risk of causing emotional distress to a victim when he knew, should have known or could have been expected to know of the risk. *Delk v. Columbia/HCA Healthcare Corp.*, 523 S.E.2d 826, 833 (Va. 2000).  Plaintiff has sufficiently alleged that Defendants should have known that refusing to serve Plaintiff, mocking her religious garb and calling her a security risk would cause emotional distress to Plaintiff.  Defendant does not appear to contest this element.

As to the second element, outrageousness, Defendants argue that Plaintiff has not pled facts sufficient to support a finding that Defendants' actions were outrageous.  "[T]he term 'outrageous' does not objectively describe particular acts but instead represents an evaluation of behavior." *Almy*, 639 S.E.2d at 187.  Indeed, "[t]he guidance provided by precedent from the Supreme Court of Virginia for distinguishing mere insults from outrageous behavior creates no steadfast rule." *Holley*, 2016 WL 4132316, at *3.  The outrageousness or intolerability analysis of an IIED claim requires context driven consideration. *Tharpe v. Lawidjaja*, 8 F. Supp. 3d 743, 783 (W.D. Va. 2014).

Under Virginia law, the conduct in question must present as "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Id.* (internal quotation marks omitted); *see also Ruth v. Fletcher*, 377 S.E.2d 412, 413 (1989) ("[T]he conduct was outrageous and intolerable in that it offends against the generally accepted standards of decency and morality.").  Further, the behavior in question must rise above the level of being merely "insensitive and demeaning." *Williams*, 997 F. Supp. 2d at 414 (citing *Harris v. Kreutzer*, 624 S.E.2d 24, 34 (Va. 2006)).  Under this standard, a plaintiff cannot obtain relief for "'mere insults, indignities, threats, annoyances, [and] petty oppressions,'" which "'plaintiffs must necessarily be

expected and required to be hardened to.'" *Simmons v. Norfolk W. Ry.*, 734 F. Supp. 230, 232

(W.D. Va. 1990) (quoting Restatement (Second) of Torts § 46 cmt. d). Notably, no objective,

bright-line rule exists for what conduct rises to the requisite level of outrageousness. *Almy*, 639

S.E.2d at 189. Thus, the Court should dismiss Plaintiff's IIED claim only if reasonable minds

could not differ on the outrageousness question. *Womack v. Eldridge*, 210 S.E.2d 145, 148 (Va.

1974). Ultimately, the Court must determine whether, considering the defendant's actions and

the context within which the defendant acted, a reasonable person would exclaim,

"'Outrageous!'" *Paroline v. Unisys Corp.*, 879 F.2d 100, 112 (4th Cir. 1989).

     "As with other admittedly hurtful conduct, racial allusions may be found not actionable

as at worst mere insult, or actionable as intolerably atrocious conduct, depending upon the

context." *Gaiters*, 831 F.2d at 53 (internal quotation marks omitted). However, in the instant

case, Plaintiff does not simply allege "mere insults, indignities, threats, annoyances, petty

oppressions, or other trivialities." *Daniczek*, 156 F. Supp. 3d at 760. Plaintiff alleges that Neely

mocked her religious garments and told her to remove her sunglasses, which Plaintiff had told

Defendant were to cover her face in accordance with her religious beliefs. (Am. Compl. ¶¶ 22,

25-26.) Further, Neely stated, in front of other patrons, "[y]ou should not even be in our store

[because] you are a security risk." (Am. Compl. ¶ 27.) The Court can easily infer that this

statement constituted a thinly veiled religiously motivated insult.

     Despite the inference that race and religion motivated this conduct, these actions alone

may fall short of the high threshold for outrageousness or intolerability. However, when taken

within the context of the entire encounter, the Court readily finds that Plaintiff has pled sufficient

facts to survive a motion to dismiss. Specifically, the Amended Complaint alleges that

Defendants refused to serve Plaintiff on the basis of her race and religion, in violation of federal

and state law. *See Brown v. Loudoun Golf and Country Club, Inc.* 573 F. Supp. 399, 405 (E.D. Va. 1983) (finding that racially-motivated discrimination may be actionable in an IIED claim). [5] Moreover, Neely called the Richmond Police Department to have Plaintiff removed from the premises despite a lack of facts suggesting that Plaintiff posed any risk to the Store or to Neely's safety. The Court finds that the facts as alleged plausibly amount to race and religious-motivated discrimination which, "offends against the generally accepted standards of decency and morality." *Ruth*, 377 S.E.2d at 413.

Regarding the causation prong, a plaintiff must plead that the defendant's conduct caused her distress. *Almy*, 639 S.E.2d at 187–88. Plaintiff alleges that Defendants' actions were the cause of her emotional distress. (Am. Compl. ¶¶ 52-54.) Therefore, Plaintiff has met the causation element. Defendants do not appear to challenge this prong.

Finally, an IIED claim requires that the emotional distress suffered by a plaintiff be "so severe that no reasonable person could be expected to endure it." *Russo*, 400 S.E.2d at 163. Under this standard, the Virginia Supreme Court has affirmed the dismissal of IIED claims based on allegations that the plaintiff "was nervous, could not sleep, experienced stress and 'its physical symptoms,' withdrew from activities, and was unable to concentrate at work," although the court acknowledged that additional allegations could sustain a claim, including allegations of an "objective physical injury caused by the stress," the seeking out of "medical attention,"

---

[5]     In *Brown*, the district court considered a claim that alleged that a private golf club denied an African-American man access to the golf course because of his race. 573 F. Supp. at 405. The court explained: "This Court declines to hold, as defendants seem to argue, that Defendant's conduct, conduct that runs contrary to policies firmly embedded in federal and Virginia law . . . does not, as a matter of law, offend generally accepted standards of decency or morality." *Id.* The court deemed the denial of service and opportunity to participate on the basis of race sufficiently outrageous conduct to support an IIED claim. *Id.*

confinement "at home or in a hospital," or "lost income." *Id.* Similarly, federal courts applying Virginia law have sustained IIED claims at the motion-to-dismiss stage based on allegations that the plaintiff sought out medical attention, experienced associated physical symptoms or had to alter his or her lifestyle due to emotional distress. *See, e.g.*, *Steele v. Goodman*, 382 F. Supp. 3d 403, 425-26 (E.D. Va. 2019) (plaintiff alleged "pain and suffering, physical injury, severe emotional trauma . . . [and] injury to reputation" as well as that "[h]is name and reputation have been publicly impugned"); *Holley v. CVS Caremark Corp.*, 2016 WL 4132316, at *4 (W.D. Va. Aug. 3, 2016) (plaintiff alleged "ongoing fear and anxiety," "physical inconvenience and other physical ramifications" and that she "was rendered less capable of performing her daily tasks"); *Faulkner*, 92 F. Supp. 3d at 502 (plaintiff alleged that she sought out counseling, refrained from intimate relations with her husband and became physically ill before going to work after co-worker sexually harassed her).

The Fourth Circuit in *Hatfill* held that a plaintiff had sufficiently pled the severity prong when he alleged "severe and ongoing loss of reputation and professional standing, loss of employment, past and ongoing financial injury, severe emotional distress and other injury, and grievous emotional distress." *Hatfill*, 416 F.3d at 337.

In *Faulkner*, the district court found that the plaintiff adequately pled facts sufficient to support the severity of her emotional distress, because the plaintiff alleged that she "was distraught, experienced extreme distress, suffered nightmares and panic attacks, and has contemplated suicide because of [Defendant]'s behavior toward her." 92 F. Supp. 3d at 502. She also alleged that these experiences caused her to seek "professional counseling" and that she refrained from "intimate relations with her husband." *Id.* Faulkner also asserted that she feared suffering an emotional breakdown. *Id.*

32

In support of their argument, Defendants cite several cases to support their assertion that Plaintiff has not alleged facts sufficient to meet the heightened pleading standards required in an IIED case under Virginia law. However, Defendants cite to cases that apply the heightened pleading standard required in Virginia state court cases and, as explained above, this Court has declined to apply that heightened standard pursuant to the precedent established in *Hatfill*, *Williams* and *Daniczek*. In the instant case, the Court finds that Plaintiff's Amended Complaint adequately pleads facts sufficient to support the severity of her emotional distress.

Plaintiff alleges that "as a direct and proximate consequence" of the encounter in question, she has suffered from extreme emotional distress, shame and humiliation. (Am. Compl. ¶ 52.) Further, she has subsequently sought professional treatment as a result of her mental anguish. (Am. Compl. ¶ 52.) Additionally, she alleges that she now suffers from agoraphobia as a result of Defendants' conduct. (Am. Compl. ¶ 53); *see Russo*, 400 S.E. 2d at 163 (explaining that Plaintiff had not sufficiently pled the severity of her distress and noting that she had not, for example, alleged that "she sought medical attention [or] that she was confined at home"). Plaintiff also asserts that immediately after the incident, she suffered a mental breakdown, which has inhibited her ability to "sleep, eat, consort with her husband or carryout otherwise routine daily functions." (Am. Compl. ¶ 54.) The Court finds that Plaintiff has pled severe emotional distress with sufficient particularity and severity to meet the Fourth Circuit's pleading requirements to survive a motion to dismiss.

For these reasons, the Court finds that Plaintiff has sufficiently pled facts in support of her IIED claim to survive a motion to dismiss. Therefore, the Court will deny Defendants' Motion as to Count V.

Finally, as to Defendants' general request to deny Plaintiff's demand for punitive damages, the Court declines to address the issue of punitive damages at the motion to dismiss stage. *See, e.g., Frye v. Marshall Cty. Coal Co.*, 2017 WL 3326762, at *2 (N.D.W. Va. Aug. 3, 2017) ("[T]he allegations relating to the request for punitive damages are matters to be developed in discovery."); *Meeks v. Emiabata*, , 2015 WL 1636800, at *2 (W.D. Va. Apr. 13, 2015) ("Fed. R. Civ. P. 12(b)(6) does not provide a vehicle to dismiss a portion of relief sought or a specific remedy, but only to dismiss a claim in its entirety."); *Debord v. Grasham*, 2014 WL 3734320, at *1 (W.D. Va. July 28, 2014) ("[A] Rule 12(b)(6) motion is a premature means to attack a request for punitive damages, at least where such damages are theoretically recoverable under the applicable law.").

## IV.    CONCLUSION

For the foregoing reasons, the Court hereby GRANTS IN PART AND DENIES IN PART Defendants' Motion to Dismiss (ECF No. 28). Specifically, the Court hereby GRANTS the Motion to Dismiss as to Count III and DENIES the Motion as to Counts I, II, IV and V.

An appropriate Order shall issue.

Let the Clerk file a copy of this Memorandum Opinion electronically and notify all counsel of record.

_____/s/_____

David J. Novak
United States District Judge

Richmond, Virginia
Date: July 6, 2020